UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

In re:                                      )
                                            )   Chapter 11
TALLGRASS BROADCASTING, LLC,                )
                                            )   Case No.
        Debtor.                             )

**DECLARATION OF SAM HEIGLE
IN SUPPORT OF TALLGRASS BROADCASTING, LLC'S
CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Sam Heigle, hereby declare under penalty of perjury:

1.  Tallgrass Broadcasting, LLC, an Illinois limited liability company and the above-captioned debtors and debtors in possession ("Tallgrass"). I am the Chief Restructuring Officer ("CRO") of Tallgrass. In addition to my employment as CRO, I am employed as an executive with Turnaround Professionals, which has been employed by C. David Rhoades, the Court appointed Receiver ("Receiver") of Tallgrass, since July 12, 2012.

2.  During my tenure as an executive with Turnaround Professionals, I assisted the Receiver by preparing and financial reports, developing and implementing administrative procedures as well as assisting in the resolution of claims.

3.  In this capacity, I am familiar with Tallgrass' day-to-day operation, business, financial affairs, and books and records.

4.  On the date hereof (the "Petition Date"), Tallgrass filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). Tallgrass continues to operate its business and manage its properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.  I submit this declaration ("First Day Declaration") to provide an overview of Tallgrass and this Chapter 11 case and to support Tallgrass' Chapter 11 petition and "first day"

1016657.1:810049:00210

motions ("First Day Motions" or "First Day Motion"). Except as otherwise indicated, all facts set forth in this First Day Declaration are based upon my personal knowledge of Tallgrass' operation and finances, information learned from my review of relevant documents, information supplied to me by other members of Tallgrass' management and Tallgrass' advisors, or my opinion based upon my experience, knowledge and information concerning Tallgrass' operations and financial condition. I am authorized to submit this First Day Declaration on behalf of Tallgrass, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## PRELIMINARY STATEMENT

6. Tallgrass is an Illinois limited liability company. Tallgrass owns and operates radio broadcasting stations in New Mexico and Texas. Tallgrass holds licenses from the Federal Communications Commission ("FCC") permitting the operation of the radio stations it owns.

7. This bankruptcy filing was precipitated by several years of protracted litigation in Oklahoma brought by Spirit Bank, N.A. ("Spirit Bank") against Tallgrass to address claims against real estate located outside Tulsa County.

**Spirit Bank Transactions and Tulsa County Lawsuit**

8. On February 27, 2007, Tallgrass, by and through its Managers, signed, executed and delivered a Commercial Loan Agreement and Commercial Promissory Note in favor of Spirit Bank in the principal amount of Three Million Seven Hundred Fifty Thousand and No./100ths Dollars ($3,750,000.00) with interest at 9.25% per annum.

9. As part of the lending transaction and to secure repayment of the Commercial Promissory Note and all future advances made by Spirit Bank, Tallgrass signed, executed and delivered to Spirit Bank a Security and Pledge Agreement of Rights and Interests ("Security and Pledge Agreement"), whereby Tallgrass granted to Spirit Bank a security interest in and to the following described collateral:

> All of Tallgrass Broadcasting, LLC's right, title and interests in and to presently owned and after acquired accounts receivables, contract rights, contract payments, computer software, tools, office furniture, machinery, supplies, equipment, inventory, general intangibles, payment intangibles, work in progress, leases, lease payments, tenant improvements, rents, franchise rights, franchise contracts, intellectual property, patents, patent rights, and all substitutes, additions, and replacements thereof and all cash and non cash proceeds from the sale, lease or exchange of all the aforementioned personal property.
>
> All of Tallgrass Broadcasting, LLC's rights, title and interest in and to the proceeds from any sale, exchange or transfer of all Federal Communications Commission broadcasting licenses, now owned or after acquired by Tallgrass Broadcasting, LLC.

10. Spirit Bank properly perfected its security interest by filing a UCC-1 Financing Statement.

11. As part of the lending transaction and to secure payment of the Commercial Promissory Note and all future advances made by Spirit Bank, Tallgrass signed, executed and delivered to Spirit Bank its Mortgage, Assignment of Contracts, Leases, Security Agreement and Fixture Financing Statement ("Mortgage") which granted Spirit Bank a mortgage and security interest in and to the real estate, buildings, improvements, easements, leases, rental agreements, goods, materials, supplies, chattels, furniture, fixtures, equipment and machinery located upon the Real Property described in the

1016657.1:810049:00210

Mortgage, which is attached as Exhibit "E" to Tallgrass' Motion to Use Cash Collateral. (All of the documents attached as exhibits to the Motion to Use Cash Collateral are collectively referred to hereafter as the "Loan Documents.)

12. Spirit Bank properly perfected its Mortgage in the Montgomery County Registry of Deeds office on April 13, 2007, in Book 565, Page 331.

13. On March 10, 2010, Spirit Bank filed a lawsuit against Tallgrass, William H. Kurtis ("Kurtis") and Joseph E. Walker ("Walker") claiming breach of the Commercial Loan Agreement in the District Court of Tulsa County, Oklahoma, Case No. CJ-2010-01962 *Spirit Bank, N.A. v. Tallgrass Broadcasting, LLC, William H. Kurtis, Joseph E. Walker.*

14. On April 1, 2010, Spirit Bank filed an Application for Appointment of Receiver. Chris Oldroyd ("Oldroyd") was initially appointed as Receiver but was later replaced by C. David Rhoades ("Receiver") on July 12, 2012.

15. On June 2, 2010, Spirit Bank obtained a Judgment against Tallgrass in the amount of $3,723,733.44 with accrued interest in the amount of $97,440.85 as of march 16, 2010, with interest accruing daily at the rate of $698.20 from March 16, 2010 plus reasonable attorneys' fees, costs of the action, costs to preserve the property and the cost of the receivership.

16. Tallgrass continues to operate its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, committee, or examiner has been appointed in this Chapter 11 case.

17. As of the Petition Date, the current, aggregate indebtedness of Tallgrass to Spirit Bank is approximately $3,000,000.00.

**Trade Debt**

18. Judgment was also entered against Tallgrass in the amount of $793,189.85 in a case brought against Tallgrass by Arbitron, Inc. ("Arbitron") in the Circuit Court of Baltimore City, Maryland styled *Arbitron, Inc. v. Tallgrass Broadcasting, LLC*, case number 24-c-11-000127. Arbitron is Tallgrass' largest unsecured creditor.

**Evidentiary Support for First Day Motions**

19. As discussed above, Tallgrass has entered bankruptcy as a result of the litigation brought by Spirit Bank, its largest secured creditor, and Arbitron, its largest unsecured creditor. Concurrently with the filing of its voluntary petition and schedules, Tallgrass has filed several First Day Motions seeking relief that Tallgrass believes are necessary to enable it to operate with minimal disruption and loss of productivity and protect and preserve its going concern value. Tallgrass requests that the relief requested in each of the First Day Motions be granted as critical elements in ensuring a smooth transition into, and stabilizing and facilitating Tallgrass' operations during the pendency of the Chapter 11 case. I have reviewed each of the First Day Motions discussed below and the facts set forth in each First Day Motion are true and correct to the best of my knowledge and belief with appropriate reliance on the Receiver and the other executives at Turnaround Professionals.

    A.    **Emergency Motion for Order Authorizing Continued Use of Bank Accounts and Business Forms and Waiver of Section 345 of the Bankruptcy Code**

20. Tallgrass seeks entry of an order under 11 U.S.C. §§ 105, 363, 364, 1107 and 1108 (i) authorizing it to use its existing bank accounts as 'debtor-in-possession" accounts in which, among other things, all accounts receivable and other amounts owed to Tallgrass will be paid and deposited, and with respect to which Tallgrass may continue to operate in the ordinary course of its business, and (ii) authoring the continued use of Tallgrass' business forms and checks without being required to place the label "debtor-in-possession" on each. I have reviewed the Bank Account Motion and I am familiar with the description of Tallgrass' bank account described therein.

21. The relief requested in the Bank Account Motion is in the best interests of Tallgrass' estate, its creditors, and all other parties in interest, and will enable Tallgrass to continue to operate its business in Chapter 11 with minimal disruption. Accordingly, on behalf of Tallgrass, I respectfully submit that the Bank Account Motion should be approved.

    **B.**    **Emergency Motion for Use of Cash Collateral**

22. Tallgrass requests entry of interim and final orders pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 507, and Bankruptcy Rules 4001(b) and 6003, as follows: (i) authorizing use of Cash Collateral, in which only Sprit Bank has an interest; (ii) for the purpose of protection of the interests of its business, the value of its estate and payment of its creditors through continued operations; (iii) for so long as Tallgrass complies with all obligations and covenants of the Loan Documents described therein; and (iv) with replacement liens and superpriority administrative claims to be

provided to Spirit Bank. The Motion to Use Cash Collateral and the exhibits attached thereto contain a description of the Loan Documents and key terms contained therein. I adopt and incorporate the description from the Motion to Use Cash Collateral as if fully set forth herein.

23. I believe the relief requested in the Motion to Use Cash Collateral is in the best interests of Tallgrass, its estate, creditors and other interested parties. It will enable Tallgrass to continue to operate its business in Chapter 11 with minimal disruption. Accordingly, on behalf of Tallgrass, I respectfully submit that the Motion to Use Cash Collateral should be approved.

### C. Motion for Entry of an Order Authorizing Employment of Hall Estill as Debtor's Counsel

24. Tallgrass seeks authority to employ Larry G. Ball and Jennifer Heald Castillo, and the law firm Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. ("Hall Estill") as attorneys for Tallgrass as debtor and debtor in possession. Hall Estill is familiar with all aspects of Tallgrass' operations and business. Additionally, Hall Estill has assisted Tallgrass in preparing for filing this case and is more than capable of representing Tallgrass as lead counsel.

25. I believe the relief requested in the Motion to employ Hall Estill is in the best interests of Tallgrass, its estate, creditors and other interested parties. It will enable Tallgrass to continue to operate its business in Chapter 11 with minimal disruption. Accordingly, on behalf of Tallgrass, I respectfully submit that the Motion to Employ Hall Estill should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Oklahoma City, Oklahoma

Dated: September 16, 2014

By: 
Chief Restructuring Officer,
Tallgrass Broadcasting, LLC

Subscribed and sworn to before me this ___16th___ day of September 16, 2014.

_____
Notary Public

My Commission Expires/Commission No.

___3.3.17___