UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

In re:                                                              )
      TALLGRASS BROADCASTING, LLC,    )    BK-14-13868-SAH
                                                          )    Chapter 11
      Debtor.                                                )

**DEBTOR'S MOTION FOR AN ORDER (A) APPROVING THE SALE OF PROPERTY FREE AND CLEAR OF ALL CLAIMS, LIENS, INTERESTS AND ENCUMBRANCES AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF AN EXECUTORY CONTRACT**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON WEDNESDAY, JANUARY 14, 2015, AT 9:30 A.M., IN THE NINTH FLOOR COURTROOM, OLD POST OFFICE BUILDING, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OKLAHOMA 73102. OBJECTIONS TO THE PROPOSED SALE MUST BE FILED AND SERVED NOT MORE THAN TWENTY-ONE (21) DAYS AFTER THE MOTION IS FILED. IF NO OBJECTION IS TIMELY FILED OR SERVED, THE COURT MAY STRIKE THE HEARING AND GRANT THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR A HEARING.**

Tallgrass Broadcasting, LLC, debtor and debtor-in -possession ("Debtor"), respectfully moves this Court to enter an order (a) approving sale of the Debtor's interest in real and personal property located in Curry County, New Mexico and Parmer County, Texas free and clear of all claims, liens, interests and encumbrances and (b) authorizing the assumption and assignment of an executory contract. The assets proposed to be sold pursuant to this Motion are hereafter referred to as the "Office/ Tower Site Assets[1]." In support of this Motion, Debtor presents to the Court and parties in interest the following:

---

[1] Debtor also seeks authority to sell additional assets located in Curry County, New Mexico and Bailey County, Texas in similar motions being filed contemporaneously with this Motion. With

1051561.1:810049:00210

**Jurisdiction**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Statutory Predicate**

2.      This Motion is brought pursuant to 11 U.S.C. §§ 363 and 365, Federal Rules of Bankruptcy Procedure 6004 and 6005 and Local Rule 6004-1.

**Background**

3.      On September 16, 2014, Debtor filed a voluntary petition seeking relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Oklahoma ("Bankruptcy Court").

4.      Debtor remains in possession of its assets and continues to manage its properties as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this case.

5.      Debtor is an Illinois limited liability company which owns and operates radio broadcasting stations in New Mexico and Texas.

6.      The Curry County Treasurer claims to hold a valid, enforceable, and allowable claim as defined in § 101 of the Bankruptcy Code against Debtor in the approximate principal balance of $1,319.70 ("Curry County Secured Indebtedness").  The Curry County Treasurer claims that the Office/ Tower Site Assets secure repayment of the Curry County Secured Indebtedness.

---

the three motions, Debtor seeks to sell all, or substantially all, of its assets free and clear of all claims, liens, interests and encumbrances.

7. Spirit Bank claims to hold valid, enforceable, and allowable claims as defined in § 101 of the Bankruptcy Code against Debtor in the approximate principal balance of $4,937,139.90 (the "Spirit Bank Secured Indebtedness"). Spirit Bank claims that the Office/ Tower Site Assets secure repayment of the Spirit Bank Secured Indebtedness.

8. The State of New Mexico, Department of Workforce Solutions ("State of New Mexico") claims to hold a valid, enforceable, and allowable claim as defined in § 101 of the Bankruptcy Code against Debtor in the approximate principal balance of $14,218.40 (the "State of New Mexico Secured Indebtedness"). The State of New Mexico claims that the Office/ Tower Site Assets secure repayment of the State of New Mexico Secured Indebtedness.

9. Arbitron, Inc. ("Arbitron") claims to hold a valid, enforceable, and allowable claim as defined in § 101 of the Bankruptcy Code against Debtor in the approximate principal balance of $793,189.85 (the "Arbitron Indebtedness"). Arbitron claims that the Office/ Tower Site Assets secure repayment of the State of New Mexico Secured Indebtedness.

10. Prior to filing this Bankruptcy Case, Debtor received an offer from Tejas Broadcasting Ltd., LLP ("Buyer") to (a) purchase the Office/ Tower Site Assets listed on **Exhibit A** attached hereto (collectively, the "Office/ Tower Site Assets") and (b) assume the Debtor's rights and obligations under the executory contract and/or unexpired lease listed on **Exhibit B** attached hereto ("Tower Use License Agreement[2]"). The Buyer's offer is memorialized in the Purchase Contract dated as of March 8, 2013 between and among C. David Rhoades, the Receiver appointed in the Tulsa County Litigation ("Receiver") and Buyer (the

---

[2] The Tower Use License Agreement is attached to the Office/ Tower Site Purchase Contract as Exhibit A.

"Office/ Tower Site Purchase Contract").[3]  The terms of the Office/ Tower Site Purchase Contract are summarized in detail below.  The Office/ Tower Site Purchase Contract is attached hereto as **Exhibit C** and is incorporated herein by this reference.  Buyer has agreed to extend all applicable dates in the Office/ Tower Site Purchase Contract and is ready, willing and able to close.

## Relief Requested

11.  By this Motion, the Debtor seeks entry of an order (a) authorizing the Debtor to sell the Office/ Tower Site Assets free and clear of liens, claims, interests and encumbrances to Buyer, subject to the terms of the Office/ Tower Site Purchase Agreement and (b) authorizing the assumption and assignment of the Tower Use License Agreement.

12.  In the exercise of its business judgment, the Debtor believes that the proposed sale is in the best interests of creditors of the Debtor's estate.

## Terms of the Proposed Sale

13.  Debtor has reached an agreement to sell and transfer the Office/ Tower Site Assets to Buyer free and clear of all liens, claims and encumbrances pursuant to § 363(b) of the Bankruptcy Code.  The Office/ Tower Site Assets do not include any assets of the Debtor not expressly described in the Office/ Tower Site Assets and do not include the following:  (i) cash and accounts receivable; (ii) the radio tower located at 1000 Sycamore, City of Clovis, Curry County, New Mexico; (iii) all real and personal property located at 600 W. 8th Street, Muleshoe, Texas, associated with the operation of radio station KMUL-FM; (iv) all FCC licenses and

---

[3]The description of the Office/ Tower Site Purchase Contract contained herein is for summary purposes only.  The Office/ Tower Site Purchase Contract contains the definitive agreement between and among the Debtor and Buyer and is the controlling agreement in the unlikely event a conflict exists.  Unless otherwise stated, capitalized terms have the meanings ascribed to them in the Office/ Tower Site Purchase Contract.

personal property associated with the operation of radio station KICA-FM in Farwell, Texas; and (v) all FCC licenses and personal property associated with the operation of radio station KMUL-AM in Farwell, Texas. Avoidance actions and other claims and causes of action belonging to the Debtor's estate are also excluded from the Office/ Tower Site Assets.

14. Pursuant to the Office/ Tower Site Purchase contract, Debtor will seek authority to assume the Tower Use License Agreement pursuant to 11 U.S.C. § 365 and immediately thereafter assign the Tower Use License Agreement to Buyer. Approval of this Motion shall constitute the Court's approval of the assumption and assignment of the Tower Use License Agreement. The Tower Use License Agreement will be assigned to Buyer as part of the sale of the Office/ Tower Site Assets pursuant to the terms of the Office/ Tower Site Purchase Contract.

15. The Office/ Tower Site Purchase Contract provides for a purchase price of $30,000.00 with an earnest money deposit of $7,500.00 that is being held in escrow pursuant to paragraph 2.1 of the Office/ Tower Site Purchase Contract. The earnest money escrow is refundable to Buyer only in the event of: (i) termination of the Office/ Tower Site Purchase Contract by Buyer, or (ii) termination of the Office/ Tower Site Purchase Contract due to Debtor's default.

16. Unless otherwise specifically provided in the Office/ Tower Site Purchase Contract, Buyer shall not assume or become liable for any liens, claims, interests, and/or encumbrances relating to the Office/ Tower Site Assets. Any such liens, claims, interests, and/or encumbrances shall attach to the proceeds of the sale.

17. The Debtor's and Buyer's obligations to consummate the Office/ Tower Site Purchase Contract are subject to the conditions set forth in the Office/ Tower Site Purchase Contract, which include approval of this Court.

18.     Buyer is purchasing the Office/ Tower Site Assets with limited representations and warranties from Debtor dealing with environmental and title defect exceptions as set forth in the Office/ Tower Site Purchase Contract.

19.     Buyer is purchasing the Office/ Tower Site Assets in good faith[4]. The Office/ Tower Site Purchase Contract is the product of substantial, extensive and good faith negotiations that were conducted at arm's length and without collusion. Accordingly, Buyer is entitled to the protection of § 363(m) of the Bankruptcy Code.

### The Debtor's Sale of the Office/ Tower Site Assets to Buyer Should Be Approved Pursuant To Section 363(b)(1) of the Bankruptcy Code

20.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have uniformly held that approval of a proposed sale of property pursuant to § 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a sound business judgment on the part of the debtor or trustee. *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986*); In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991). Courts also require that there be adequate and reasonable notice of the sale and a fair and reasonable price and good faith negotiations with the buyer. *In re Abbotts*

---

[4] While the Bankruptcy Code does not define "good faith," the Tenth Circuit has held that the standard for a good faith purchaser is one who buys (i) in "good faith," i.e., through a sale that does not involve fraud or collusion, and (ii) for value. *In re Independent Gas & Oil Producers, Inc.*, 80 Fed. Appx. 95, 99-100 (10th Cir. 2003).

*Dairies*, 788 F.2d 143, 147 (3rd Cir. 1986); *In re Buerge*, 479 B.R. 101, 106 (Bankr. D. Kan. 2012).

21. The primary goal of any proposed sale of a debtor's property is to maximize the value received by the estate. *Four B Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-565 (8th Cir. 1997); *In re Buerge*, 479 B.R. at 106 ("The trustee's duty is to maximize the value obtained from a sale."); *In re C.W. Min. Co.*, 2010 WL 841395 (Bankr. D. Utah 2010) (courts "must always scrutinize whether a trustee has fulfilled his duty to maximize the value obtained from a sale"); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources)*, 147 B.R. 650, 656-657 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the Debtors' duty with respect to such sales in to obtain the highest price or greatest overall benefit possible for the estate.") To that end, courts have permitted a proposed sale of all or substantially all the assets of a debtor outside the ordinary course of business if such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *In re GSC, Inc.*, 453 B.R. 132, 165 (Bankr. S.D.N.Y. 2011) (finding that a sale obviated the need for significant time and litigation that would diminish the value of assets before a plan could be confirmed).

22. The Debtor submits that the proposed sale of the Office/ Tower Site Assets is a reasonable business decision in light of the circumstances and is in the best interest of the estate and its creditors. Further, the Debtor submits that the proposed sale presents the best opportunity to realize the maximum value of the estate's assets for distribution to creditors and is necessary to preserve the value of the estate's assets for the estate and its creditors.

### The Debtor's Sale of the Office/ Tower Site Assets to Buyer Should be
### Approved Pursuant to Section 363(f) of the Bankruptcy Code

23. Pursuant to § 363(f) of the Bankruptcy Code, a debtor may sell property under § 363(b) free and clear of any interest in such property if:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See also, In re Elliot*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (holding that Section 363(f) is written in disjunctive language allowing a court to approve a sale "free and clear" provided at least one of the requirements is met).

24. As mentioned above, the Curry County Treasurer, Spirit Bank, the State of New Mexico and Arbitron assert that the Office/ Tower Site Assets secure repayment of certain pre-petition indebtedness. The Debtor believes it will have the consent of the Curry County Treasurer, Spirit Bank, the State of New Mexico and Arbitron to the sale of the office/ Tower Site Assets in satisfaction of § 363(f)(2) of the Bankruptcy Code at the hearing on the Motion.

25. Notwithstanding such consent, the Debtor submits that it may sell the Office/ Tower Site Assets free and clear of the liens, with such liens attaching to the proceeds of the sale, pursuant to § 363(f)(1) because applicable nonbankruptcy law permits the sale of the Office/ Tower Site Assets free and clear of any such liens. Debtor may also sell the Office/ Tower Site Assets free and clear of the liens, with such liens attached to the proceeds of the sale, pursuant to

1051561.1:810049:00210

§ 363(f)(5) because the Curry County Treasurer, Spirit Bank, the State of New Mexico and Arbitron could be compelled to accept a money satisfaction.

26. In addition to lienholders, there are a number of other parties who may assert interests in the Office/ Tower Site Assets. The Debtor submits that it may sell the Office/ Tower Site Assets free and clear of these interests, with such interests attaching to the proceeds of the sale, pursuant to §§ 363(f)(1) and 363(f)(5), because applicable nonbankruptcy law permits the sale of the Office/ Tower Site Assets free and clear of any such liens and because the claimants could be compelled to accept money satisfaction of their interest in the Subject Assets.

27. Additionally, all junior liens will be satisfied by operation of § 363(f)(3) as the sale process will set the value of purchased assets. *In re Beker Industries Corp*., 63 B.R. 474, 475-476 (Bankr. S.D.N.Y. 1986) (holding that the sale price in a § 363 sale need not exceed the value of debts secured by the property); *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 712-713 (Bankr. W.D. Texas 1989); *In re Hartfield Homes, Inc*., 30 B.R. 353, 355 (Bankr. E.D. Pa. 1983) ("… if the proposed sale price is the best price obtainable under the circumstances of a particular case, then the fact that junior lien holders may receive little or nothing from the proceeds of the sale would not, standing alone, constitute reason for disapproving the proposed sale.")

28. Debtor proposes to pay the Curry County Secured Indebtedness at closing, but to hold the remainder of the proceeds in a segregated account, subject to the liens of all interest holders pending further order of this Court.

## Assumption and Assignment of the Tower Use License Agreement

29. By this Motion, and pursuant to § 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6006, the Debtor seeks approval of the assumption of the Tower Use

License Agreement. Notwithstanding the approval or disapproval of the foregoing motion to approve the sale of the Office/ Tower Site Assets to Buyer, Debtor requests the approval of the Tower Use License Agreement as described in paragraph 14 above.

30. Debtor believes that the Tower Use License Agreement does not require any cure pursuant to § 365(b) of the Bankruptcy Code and any claims thereunder will attach to the proceeds of the sale. Accordingly, Debtor requests that the Court determine that no cure obligation exists as to the Tower Use License Agreement. THE DEBTOR PROPOSES THAT EACH COUNTERPARTY TO THE TOWER USE LICENSE AGREEMENT CLAIMING A CURE COST EXISTS BE REQUIRED TO TIMELY OBJECT TO THIS MOTION, LIST WITH SPECIFICITY THE AMOUNT AND BASIS FOR ITS CURE COST CLAIM, AND PROVIDE DOCUMENTATION THEREOF. To the extent that there are any timely filed and served written objections, Debtor requests that the Court determine the disputed cure amount at the hearing set on this Motion.

31. Section 365 of the Bankruptcy Code authorizes the assumption of an executory contract subject to court approval and the satisfaction of any defaults under the applicable executory contract. Moreover, § 365 of the Bankruptcy Code authorizes the assignment of an executory contract subject to court approval and adequate assurance of future performance by the assignee of such contract.

32. The standard to determine whether an executory contract should be assumed is whether in the debtor's "business judgment" such assumption is in the debtor's economic best interest. *In re King Resources Company*, 482 F.2d 552 (10th Cir. 1973); In *the Matter of Tilco, Inc.*, 558 F.2d 1369 (10th Cir. 1977); *Sharon Steel Corp. v. National Fuel Gas Distr. Corp., (In re Sharon Steel Corp.*), 872 F.2d 36 (3rd Cir. 1989); *Richmond Leasing Co. v. Capital Bank, N.A.*,

762 F.2d 1303 (5th Cir. 1985). In the exercise of its business judgment, Debtor has determined that the assumption and assignment of the Tower Use License Agreement is in the Debtor's economic best interest because such assumption and assignment is an integral part of the sale of the Office/ Tower Site Assets.

33. Pursuant to § 365(f), a debtor may assign an executory contract if adequate assurance of future performance by an assignee of the executor contract is provided. Debtor has been advised that Buyer has the capability to satisfy any and all obligations it will incur with respect to the Tower Use License Agreement.

WHEREFORE, the Debtor respectfully requests entry of an order (a) authorizing the Debtor to sell the Office/ Tower Site Assets free and clear of liens, claims, interests and encumbrances to Buyer, subject to the terms of the Office/ Tower Site Purchase Contract, (b) authorizing the assumption and assignment of the Tower Use License Agreement and (c) granting such other and further relief as is just.

DATED: this 19th day of December, 2014.

                     */s/ Jennifer Heald Castillo*
                     Larry G. Ball, OBA #12205
                     Jennifer Heald Castillo, OBA #19504
                     HALL, ESTILL, HARDWICK, GABLE,
                     GOLDEN & NELSON, P.C.
                     100 N. Broadway, Suite 2900
                     Oklahoma City, Oklahoma 73102
                     Tel: (405) 553-2828
                     Fax: (405) 553-2855
                     lball@hallestill.com
                     jcastillo@hallestill.com

                     ATTORNEYS FOR DEBTOR AND
                     DEBTOR IN POSSESSION,
                     TALLGRASS BROADCASTING, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2014, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file the Clerk of Court will transmit a Notice of Electronic Filing to all registered participants.

A true and correct copy of the above and foregoing document was also sent via first class mail, postage prepaid to the following:

| | | |
|---|---|---|
| Arbitron Inc.<br>9705 Patuxent Woods Drive<br>Columbia, MD 21046 | Bailey County Texas<br>300 South 1 Street<br>Muleshoe, TX 79347 | Bobbie Pierson<br>Parmer Tax Assessor<br>PO Box G<br>Farwell, TX 79325 |
| City of Clovis<br>321 N. Connelly<br>Clovis, NM 88101 | Debbie Spriggs<br>Curry County New Mexico Treasurer<br>700 North Main Street<br>Suite 8<br>Clovis, NM 88101 | Detreil Lundin and Rackley<br>201 Fletcher Avenue<br>Sarasota, FL 34237 |
| Fletcher Heald and Hildreth PLC<br>1300 North 17 Street<br>Arlington, VA 22209 | Internal Revenue Service<br>Centralized Insolvency Operation<br>PO Box 7346<br>Philadelphia, PA19101 | Joe Walker<br>1174 Hunter Ridge East<br>Hoffman Estates, IL 60192 |
| Katheryn H. Gurley<br>District Attorney<br>Parmer County<br>PO Box 729<br>Priona, TX 79035 | Kenneth J. Gonzales<br>United States District Attorney<br>District of New Mexico<br>PO Box 607<br>Albuquerque, NM 87103 | Marketron Broadcast Solutions<br>62215 Collections Center Drive<br>Chicago, IL 60693 |
| Matthew Chandler<br>Ninth Judicial District Attorney<br>Curry County<br>417 Gidding Street Suite 200<br>Clovis, NM 88101 | Sarah R. Saldana<br>United States District Attorney<br>Amarillo National Plaza Two<br>500 South Taylor Street Suite 300<br>Amarillo, TX 79101 | Spirit Bank<br>601 N. Main<br>Bristow , OK 74010 |

| | | |
|---|---|---|
| State of New Mexico<br>Department of Workforce Solutions<br>401 Broadway Boulevard NE<br>Albuquerque, NM 87102 | Susan Combs<br>Comptroller for the State of Texas<br>PO Box 13528<br>Capitol Station<br>Austin, TX 78711 | Tejas Broadcasting Ltd. LLP<br>5201 N. O'Connor Boulevard<br>Irving, TX 75039 |

William Kurtis
108 W. Grand
Chicago, IL 60610


                                              */ s/ Jennifer Heald Castillo*

1051561.1:810049:00210

**Exhibit A**

Office/Studio located at 1000 Sycamore:  A tract out of Lots 1-6 in Block 28 of the Clovis Heights Subdivision to the City of Clovis, Curry County, New Mexico

KICA-AM Tower Site:

Parcel #1:  A 13.532 acre tract of land in SW ¼, Section 12, and the NW ¼, Section 13, T16S R1E, Capitol Land Syndicate, Parmer County, Texas, being described as follows:

BEGINNING at the Southwest corner of Section 12, T16, R1E;
THENCE North, along the west line of Section 12, a distance of 506.74 feet;
THENCE N. 88°56' 50" E, parallel to the South line of Section 12, a distance of 1,163.37 feet;
THENCE South parallel to the West line of Section 12, a distance of 506.74 feet;
THENCE S. 88°56' 50" West, along the South line of Section 12, a distance of 1,163.37 feet to the POINT AND PLACE OF BEGINNING, Said tract containing 13.532 acres of land.

Parcel #2:  A 8.365 acre tract of land in SW ¼, Section 12, and the NW ¼, Section 13, T16S, R1E, Capitol Land Syndicate, Parmer County, Texas, being described as follows:

BEGINNING at the Northwest corner of Section 13, T16S, R1E;
THENCE South, along the West line of Section 13, a distance of 313.26 feet;
THENCE N. 88°56' 50" E, parallel to the North line of Section 13, a distance of 1,163.37 feet;
THENCE North, parallel to the West line of Section 13, a distance of 313.26 feet;
THENCE S. 88°56' 50" West, along the North line of Section 13, a distance of 1,163.37 feet to the POINT AND PLACE OF BEGINNING. Said tract containing 8.375 acres of land.

## Exhibit B

Tower Use License Agreement between Vangard Wireless, LLC and Tallgrass Broadcasting, LLC which grants certain non-exclusive rights to install, maintain and operate radio communications equipment as more particularly described therein (attached to the Office/ Tower Site Purchase Contract as Exhibit A)

1051561.1:810049:00210

**Exhibit C**
**Office/ Tower Site Purchase Contract**

1051561.1:810049:00210